Daniel M. Abuhoff (dmabuhof@debevoise.com)
Olga Kaplan (okaplan@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6696

*Attorneys for Plaintiff Harbinger F&G, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                 :
HARBINGER F&G, LLC,          :  Index No. 12-civ-5315 (RA)
                 :
          Plaintiff,  :  ECF Case
                 :
v.                 :
                 :  **ANSWER TO**
OM GROUP (UK) Limited,       :  **COUNTERLCIAMS**
                 :
          Defendant.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    Plaintiff and Counter Claimant Harbinger F&G LLC (formerly known as

Harbinger OM, LLC) ("Harbinger"), by and through its undersigned counsel, as its

Answer to the Counterclaims of Defendant and Counter Claimant OM Group (UK)

Limited ("OM Group"), alleges as follows:

    54.   Harbinger denies the allegations contained in paragraph 54, except admits

the allegations in the first sentence of paragraph 54, and refers to the Original Stock

Purchase Agreement for the true contents thereof.

    55.   Harbinger denies the allegations contained in paragraph 55, and refers to

the Original Stock Purchase Agreement for the true contents thereof.

    56.   Harbinger denies the allegations contained in paragraph 56, and avers that

on or around September 17, 2010, F&G Life submitted a Form D filing to the MIA seeking

approval of the reinsurance transaction on terms agreed to in the Original Stock Purchase Agreement.

57.     Harbinger denies the allegations contained in paragraph 57, except admits the allegations in the first sentence of paragraph 57, and refers to the Stock Purchase Agreement for the true contents thereof

58.     Harbinger denies the allegations contained in paragraph 58, and refers to the Stock Purchase Agreement for the true contents thereof, and avers that Philip A. Falcone is the chief investment officer of Harbinger Capital Partners LLC, a private investment firm.

59.     Harbinger denies the allegations contained in paragraph 59, and avers that F&G Life withdrew its Form D filing dated September 17, 2010, prior to the Closing of the Stock Purchase Agreement on April 6, 2011, and F&G Life submitted a Form D filing to the MIA on July 26, 2011 seeking approval of the Reinsurance Transaction.

60.     Harbinger denies the allegations contained in paragraph 60, except admits the allegations in the first sentence of paragraph 60, and refers to the Lewis & Ellis report dated December 14, 2011 for the true contents thereof.

61.     Harbinger denies the allegations contained in paragraph 61, and avers that on December 22, 2011, a representative of the MIA advised F&G Life that the Commissioner of the MIA had concerns with the Reinsurance Transaction and that it would not be approved on the proposed terms.

62.     Harbinger denies the allegations contained in paragraph 62, and avers that the MIA gave F&G Life an opportunity to withdraw its Form D filing.

63.     Harbinger denies the allegations contained in paragraph 63.

64.     Harbinger denies the allegations contained in paragraph 64.

65.     Harbinger denies the allegations contained in paragraph 65, except admits the allegations in the first sentence of paragraph 65, and refers to the January 10, 2012 letter from the MIA for the true contents thereof.

66.     Harbinger denies the allegations contained in paragraph 66, and avers that F&G Life met with the MIA on two occasions in person to discuss the Reinsurance Transaction, and admits that F&G Life elected to waive the hearing.

67.     Harbinger denies the allegations contained in paragraph 67, except denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence in paragraph 67.

68.     Harbinger denies the allegations contained in paragraph 68, except admits that F&G Life met with the MIA staff on March 15, 2012 to discuss their substantive concerns with the proposed Reinsurance Transaction.

69.     Harbinger denies the allegations contained in paragraph 69, and refers to the MIA's letter dated January 10, 2012 and the Stock Purchase Agreement for the true contents thereof.

70.     Harbinger denies the allegations contained in paragraph 70.

71.     Harbinger denies the allegations contained in paragraph 71, except admits that on April 6, 2012, Harbinger's President, Omar Asali, sent OM Group a Notice of Post-Closing PP Reduction, and refers to the April 6, 2012 notice for the true contents thereof.

72.     Harbinger denies the allegations contained in paragraph 72, and refers to the letter dated April 19, 2012 from OM Group to Harbinger for the true contents thereof.

73.     Harbinger denies the allegations contained in paragraph 73, and refers to the Term Sheet dated May 1, 2012 that OM Group sent Harbinger for the true contents thereof.

74.     Harbinger denies the allegations contained in paragraph 74, and refers to the letter from Harbinger to OM Group dated May 16, 2012 for the true contents thereof.

75.     Harbinger denies the allegations contained in paragraph 75.

76.     Harbinger denies the allegation contained in paragraph 76, except admits a conference call took place on or about May 4, 2012, and avers that OM Group stated that it would consider appropriate compensation to Harbinger for any delay in the transfer of the full $1 billion of assets into the Trust Account.

77.     Harbinger denies the allegations contained in paragraph 77, and refers to the letter from OM Group dated May 18, 2012 for the true contents thereof.

78.     Harbinger denies the allegations contained in paragraph 78.

79.     Harbinger denies the allegations contained in paragraph 79.

80.     Harbinger denies the allegations contained in paragraph 80.

81.     Harbinger denies the allegations contained in paragraph 81.

82.     Harbinger denies the allegations contained in paragraph 82, and refers to the letter from the MIA dated November 19, 2010 for the true contents thereof.

83.     Harbinger denies the allegations contained in paragraph 83, except admits that Harbinger provided the MIA with access to its legal counsel.

84.     Harbinger denies the allegations contained in paragraph 84.

85.     Harbinger denies the allegations contained in paragraph 85, and refers to the December 8, 2011 regulatory filing for the true contents thereof.

86.     Harbinger denies the allegations contained in paragraph 86.

87.     Harbinger denies the allegations contained in paragraph 87, and refers to the SEC Complaint filed on June 27, 2012 in the Southern District of New York and the June 27, 2012 "Cease and Desist Order" for the true contents thereof.

88.     Harbinger denies the allegations contained in paragraph 88, and refers to the SEC Complaints filed on June 27, 2012 in the Southern District of New York for the

true contents thereof.

89.     Harbinger denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 89.

90.     Harbinger denies the allegations contained in paragraph 90, and refers to the Complaint in this action for the true contents thereof.

91.     Harbinger denies the allegations contained in paragraph 91, and refers to the Stock Purchase Agreement for the true contents thereof.

92.     Harbinger denies the allegations contained in paragraph 92, and refers to the Stock Purchase Agreement for the true contents thereof.

93.     Harbinger denies the allegations contained in paragraph 93, and refers to the Stock Purchase Agreement for the true contents thereof.

94.     Harbinger denies the allegations contained in paragraph 94, and refers to the Stock Purchase Agreement for the true contents thereof.

95.     Harbinger denies the allegations contained in paragraph 95, and refers to the Stock Purchase Agreement for the true contents thereof.

96.     Harbinger denies the allegations contained in paragraph 96, and refers to the Stock Purchase Agreement for the true contents thereof.

97.     Harbinger denies the allegations contained in paragraph 97, and refers to

the Stock Purchase Agreement for the true contents thereof.

98.      Harbinger denies the allegations contained in paragraph 98, and refers to the Stock Purchase Agreement for the true contents thereof.

99.      Harbinger denies the allegations contained in paragraph 99, and refers to the Stock Purchase Agreement for the true contents thereof.

100.      Harbinger denies the allegations contained in paragraph 100, and refers to the Stock Purchase Agreement for the true contents thereof.

101.      Harbinger denies the allegations contained in paragraph 101, and refers to the Stock Purchase Agreement for the true contents thereof.

102.      Harbinger denies the allegations contained in paragraph 102.

## COUNTERCLAIMS OF DEFENDANT OM GROUP (UK) LIMITED AGAINST PLAINTIFF HARBINGER F&G, LLC

### FIRST COUNTERCLAIM
**(Breach of Contract)**

103.      Harbinger repeats, realleges, and incorporates each and every response above as if fully set forth herein.

104.      Harbinger denies the allegations contained in paragraph 104, and refers to the Stock Purchase Agreement for the true contents thereof.

105.      Harbinger denies the allegations contained in paragraph 105.

106.     Harbinger denies the allegations contained in paragraph 106.

107.     Harbinger denies the allegations contained in paragraph 107, and refers to the Stock Purchase Agreement for the true contents thereof.

108.     Harbinger denies the allegations contained in paragraph 108, and refers to the Stock Purchase Agreement for the true contents thereof.

109.     Harbinger denies the allegations contained in Paragraph 109, and refers to the Stock Purchase Agreement for the true contents thereof.

110.     Harbinger denies the allegations contained in paragraph 110.

## SECOND COUNTERCLAIM
### (Breach of Representations and Warranties)

111.     Harbinger repeats, realleges, and incorporates each and every response above as if fully set forth hereof.

112.     Harbinger denies the allegations contained in paragraph 112, and refers to the Stock Purchase Agreement for the true content thereof.

113.     Harbinger denies the allegations contained in paragraph, and refers to the Stock Purchase Agreement for the true contents thereof.

114.     Harbinger denies the allegations contained in paragraph 114.

115.     Harbinger denies the allegations contained in paragraph 115, and refers to

the Stock Purchase Agreement for the true contents thereof.

116.    Harbinger denies the allegations contained in paragraph 116, and refers to the Stock Purchase Agreement for the true contents thereof.

117.    Harbinger denies the allegations contained in paragraph 117, and refers to the Stock Purchase Agreement for the true contents thereof.

## THIRD COUNTERCLAIM
### (Breach of Contract)

118.    Harbinger repeats, realleges, and incorporates each and every response above as if fully set forth herein.

119.    Harbinger admits the allegations in the first sentence of paragraph 119, denies the allegations in the second sentence of paragraph 119, and avers that OM Re's liability to F&G Life under the 2008 CARVM Treaty was secured by letters of credit sponsored by OM Group or an affiliate.

120.    Harbinger denies the allegations contained in paragraph 120, and refers to the 2008 CARVM Treaty for the true contents thereof.

121.    Harbinger denies the allegations contained in paragraph 121, and refers to the Stock Purchase Agreement for the true contents thereof.

122.    Harbinger admits the allegations in the first sentence of paragraph 122, denies the allegations in the second sentence of paragraph 122.

123.    Harbinger denies the allegations contained in paragraph 123.

124.    Harbinger denies the allegations contained in paragraph 124.

## AS TO PRAYER FOR RELIEF

125.    Harbinger denies the allegations contained in OM Group's Prayer for Relief in its entirety.

## FIRST AFFIRMATIVE DEFENSE

126.    Defendant had failed to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

127.    Defendant's claims are barred by the doctrines of waiver and/or estoppel.

## THIRD AFFIRMATIVE DEFENSE

128.    Defendant's claims are barred, in whole or in part, by the doctrine of unclean hands.


Dated:      New York, New York
            October 9, 2012

                        DEBEVOISE & PLIMPTON LLP

                         By:  /s/   Daniel M. Abuhoff
                            Daniel M. Abuhoff (dmabuhof@debevoise.com)
                            Olga Kaplan (okaplan@debevoise.com)

                        919 Third Avenue
                        New York, New York 10022
                        (212) 909-6000

                        *Attorneys for Harbinger F&G, LLC*