UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                            :
HARBINGER F&G, LLC,
                                            :   No. 12-CV-5315 (RA) (AJP)
            Plaintiff,
                                            :
v.                                              REPORT AND RECOMMENDATION
                                            :        OF SPECIAL MASTER
OM GROUP (UK) Limited,
                                            :
            Defendant.
                                            :
------------------------------------------------------------X

## TO THE HONORABLE ANDREW J. PECK
## UNITED STATES MAGISTRATE JUDGE:

The Report and Recommendation is submitted pursuant to the Order dated May 8, 2013,

appointing me as a Special Discovery Master pursuant to Rule 53(a)(1)(C) of the Federal Rules

of Civil Procedure for the purpose of assessing challenges by defendant OM Group (UK)

Limited (OM) to certain documents that plaintiff Harbinger F&G, LLC (Harbinger) has withheld

or redacted as privileged.

### BACKGROUND

In April 2011, OM sold to Harbinger a Maryland-domiciled life insurance company,

Fidelity and Guaranty Life Insurance Company (F&G Life). Under the terms of the governing

contract (the SPA), Harbinger was to seek regulatory approval from the Maryland Insurance

Administration (MIA) for the transfer of $3 billion of F&G Life's assets to a reinsurance

company (Front Street) owned by Harbinger (the Reinsurance Transaction). The reinsurer

intended to hire an affiliated investment manager to invest up to $1 billion of the transferred

assets in high-yield securities to be held in an account known as the Trust Account. The other $2

billion would be invested in a separate account, known as the Funds Withheld Account,

1

according to more conservative investment guidelines. Subject to various conditions, Harbinger was entitled to a refund of up to $50 million (the Purchase Price Adjustment) in the event regulatory approval was denied. The MIA denied approval of the Reinsurance Transaction, and Harbinger demanded payment of the $50 million Purchase Price Adjustment. OM refused, contending that Harbinger failed to satisfy the conditions for payment. This litigation ensued.

OM's challenges fall into two broad categories. First, OM asserts that based upon the information provided in Harbinger's privilege log, Harbinger has withheld or redacted communications with counsel that are not privileged because they contain no legal advice, but instead are communications concerning business issues that "happen to involve lawyers." Second, OM asserts that Harbinger has waived the privilege with respect to certain redacted and withheld documents by voluntarily and intentionally producing communications with counsel pertaining to Harbinger's efforts to reverse the decision by the MIA to deny approval of the Reinsurance Transaction. OM asserts that Harbinger has improperly engaged in the selective and unfair disclosure of certain documents, while simultaneously shielding others about "the same subject matter."

At issue in this case, and relevant to the issue of subject matter waiver, is whether Harbinger was obligated to undertake "Remedial Efforts," as set forth in Section 5.21(d) of the SPA, and if so, whether Harbinger satisfied this obligation. Section 5.21(d) provides in pertinent part:

> In the event that a Governmental Entity requires that the terms of the Reinsurance Transaction be changed or altered in a manner that materially and adversely affects the economic benefits reasonably expected to be derived by Buyer thereunder, each of Buyer and Seller shall use its reasonable best efforts and cooperate and negotiate in good faith to agree to alternative terms that are acceptable to such Governmental Entity and provide benefits substantially similar to the benefits provided under the existing terms thereof ("Remedial Efforts) "); provided that neither party shall have an obligation to so negotiate in good faith such alternative terms for a period of more than 150 days* * *.

2

Harbinger contends that it was not required to undertake Remedial Efforts because in issuing the denial of approval, the MIA did not require any change or alteration in the terms of the Reinsurance Transaction. Alternatively, Harbinger asserts that it in fact complied with the Remedial Efforts provision of the SPA. OM contends that the Harbinger was required to undertake Remedial Efforts, but failed to use its reasonable best efforts and cooperate and negotiate in good faith with OM to agree to alternative terms that would be acceptable to the MIA.

## ASSERTION OF ATTORNEY-CLIENT PRIVILEGE/WORK-PRODUCT[1]

### Overview

There are 853 entries on Harbinger's privilege log of withheld documents, and 245 entries on Harbinger's privilege log of redacted documents.  There is, however, substantial duplication in the documents withheld and redacted, in particular, multiple versions of the same email chains. Accordingly, while the sheer number of log entries might suggest an overly broad assertion of privilege, the number of unique documents or email chains that Harbinger has withheld or redacted is actually relatively small (I would estimate between 50 and 75). Although

---

[1] Paragraph 3 of the Order Appointing a Special Discovery Master directs the Special Master to file with the Clerk of the Southern District of New York (1) those documents that the Special Master finds Plaintiff has improperly withheld and must produce, and (2) those documents that the Special Master determines are partially privileged and that Plaintiff must produce in redacted form. All of the challenged documents were provided to me via access to a secure database maintained by Plaintiff. I therefore suggest that to the extent there are objections to this Report and Recommendation, Plaintiff should provide the challenged documents to the Court in such form as the Court may request. In connection with my review of the challenged documents, I have received and considered transcripts of hearings before Judge Peck, as well a letter submission from OM (dated May 22, 2013), annexing certain documents produced by Harbinger and the transcript of the deposition of Harbinger's lead outside counsel, Michael Devins, and a letter submission from Harbinger (dated June 5, 2013). I have also reviewed the exhibits referenced at the Devins deposition. Counsel are requested to provide these documents to Judge Peck in the event there are objections to this Report and Recommendation.

according to more conservative investment guidelines. Subject to various conditions, Harbinger was entitled to a refund of up to $50 million (the Purchase Price Adjustment) in the event regulatory approval was denied. The MIA denied approval of the Reinsurance Transaction, and Harbinger demanded payment of the $50 million Purchase Price Adjustment. OM refused, contending that Harbinger failed to satisfy the conditions for payment. This litigation ensued.

OM's challenges fall into two broad categories. First, OM asserts that based upon the information provided in Harbinger's privilege log, Harbinger has withheld or redacted communications with counsel that are not privileged because they contain no legal advice, but instead are communications concerning business issues that "happen to involve lawyers." Second, OM asserts that Harbinger has waived the privilege with respect to certain redacted and withheld documents by voluntarily and intentionally producing communications with counsel pertaining to Harbinger's efforts to reverse the decision by the MIA to deny approval of the Reinsurance Transaction. OM asserts that Harbinger has improperly engaged in the selective and unfair disclosure of certain documents, while simultaneously shielding others about "the same subject matter."

At issue in this case, and relevant to the issue of subject matter waiver, is whether Harbinger was obligated to undertake "Remedial Efforts," as set forth in Section 5.21(d) of the SPA, and if so, whether Harbinger satisfied this obligation. Section 5.21(d) provides in pertinent part:

> In the event that a Governmental Entity requires that the terms of the Reinsurance Transaction be changed or altered in a manner that materially and adversely affects the economic benefits reasonably expected to be derived by Buyer thereunder, each of Buyer and Seller shall use its reasonable best efforts and cooperate and negotiate in good faith to agree to alternative terms that are acceptable to such Governmental Entity and provide benefits substantially similar to the benefits provided under the existing terms thereof ("Remedial Efforts) "); provided that neither party shall have an obligation to so negotiate in good faith such alternative terms for a period of more than 150 days* * *.

2

according to more conservative investment guidelines. Subject to various conditions, Harbinger was entitled to a refund of up to $50 million (the Purchase Price Adjustment) in the event regulatory approval was denied. The MIA denied approval of the Reinsurance Transaction, and Harbinger demanded payment of the $50 million Purchase Price Adjustment. OM refused, contending that Harbinger failed to satisfy the conditions for payment. This litigation ensued.

OM's challenges fall into two broad categories. First, OM asserts that based upon the information provided in Harbinger's privilege log, Harbinger has withheld or redacted communications with counsel that are not privileged because they contain no legal advice, but instead are communications concerning business issues that "happen to involve lawyers." Second, OM asserts that Harbinger has waived the privilege with respect to certain redacted and withheld documents by voluntarily and intentionally producing communications with counsel pertaining to Harbinger's efforts to reverse the decision by the MIA to deny approval of the Reinsurance Transaction. OM asserts that Harbinger has improperly engaged in the selective and unfair disclosure of certain documents, while simultaneously shielding others about "the same subject matter."

At issue in this case, and relevant to the issue of subject matter waiver, is whether Harbinger was obligated to undertake "Remedial Efforts," as set forth in Section 5.21(d) of the SPA, and if so, whether Harbinger satisfied this obligation. Section 5.21(d) provides in pertinent part:

> In the event that a Governmental Entity requires that the terms of the Reinsurance Transaction be changed or altered in a manner that materially and adversely affects the economic benefits reasonably expected to be derived by Buyer thereunder, each of Buyer and Seller shall use its reasonable best efforts and cooperate and negotiate in good faith to agree to alternative terms that are acceptable to such Governmental Entity and provide benefits substantially similar to the benefits provided under the existing terms thereof ("Remedial Efforts) "); provided that neither party shall have an obligation to so negotiate in good faith such alternative terms for a period of more than 150 days* * *.

2

I disagree with a number of Harbinger's privilege designations, I conclude that Harbinger has for the most part confined its assertion of privilege to communications whose predominate purpose is to solicit or render legal advice, and reject OM's assertion that Harbinger's privilege designations are overbroad because the designated documents are "communications concerning business issues that happen to involve lawyers," or "communications among individuals who work in an accounting or financial reporting capacity that are unlikely to involve legal advice." At the same time, however, the nature of the information provided with respect to a number of email chains provides support for OM's concerns. Harbinger has provided author and recipient information only for the last email in a chain, which not infrequently reflects a communication among non-attorneys or in-house counsel with arguably dual roles. While I appreciate the practical reasons for this limitation, it means that the log itself may not reflect earlier communications with outside counsel in the same chain that provide the basis for the claim of privilege. Moreover, information provided regarding the basis for the assertion of privilege is often "boilerplate" that makes it difficult to assess the claim of privilege. OM's request for *in camera* review of the withheld and redacted documents is therefore not without reasonable foundation.

Privilege Determinations

Pursuant to Paragraph 3 of the Order Appointing a Special Discovery Master, I have annexed two charts, setting forth by privilege log number my determinations regarding (1) documents withheld by Plaintiff that must be produced or redacted and (2) documents redacted by Plaintiff that must be produced in whole or in further part.

## SUBJECT MATTER WAIVER

Rule 502(a) of the Federal Rules of Evidence provides that when "a disclosure is made in a federal proceeding* * *and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Subject matter waiver rests on the principle that a party may not use the attorney-client privilege as both a sword and a shield. The waiver aims to prevent prejudice to a party that may arise when a privilege holder releases only communications or portions of communications favorable to his litigating position, while withholding any unfavorable ones. Because notions of fairness underlie the principle of subject matter waiver, courts make determinations on a case-by-case basis, taking into account, among other things, whether a party's disclosure was demonstrably prejudicial to the other party.

It is undisputed that Harbinger has intentionally disclosed and waived the attorney-client privilege or work-product protection with respect to certain communications with counsel pertaining to Harbinger's "efforts to reverse the MIA decision" to deny approval of the Reinsurance Transaction. OM asserts that Harbinger has withheld or redacted communications that concern the same subject matter and that ought in fairness be considered together with the disclosed communications.

The crux of this issue is the scope of Harbinger's subject matter waiver. The Explanatory Note to Rule 502(a) indicates that if a waiver is found, the scope of the waiver is limited to the information disclosed, unless a broader waiver is made necessary by the intentional and

5

misleading use of privileged or protected communications or information. The Explanatory Note also states that subject matter waiver is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner, in order to gain a tactical advantage.

OM contends that Harbinger has disclosed privileged communications that pertain not only to Harbinger's efforts to reverse the MIA decision, but also to "efforts to engage with OM and its counsel to seek approval of the Reinsurance Transaction.," and analysis and advice from attorneys regarding Harbinger's obligations under the SPA, including whether it had an obligation to make Remedial Efforts. In addition, OM contends that what Harbinger did to reverse the MIA's decision is "inextricably linked" to what Harbinger believed it was obligated to do to reverse the MIA's decision, and to Harbinger's efforts to engage with OM, and that communications on these subjects are therefore "part of the same subject matter." OM accordingly argues that Harbinger should be required to produce all privileged communications pertaining to these subjects.

Harbinger contends that the disclosure of privileged communications regarding its efforts to reverse the MIA decision constitutes a limited waiver of communications that "concern planning and actions with respect to the MIA," that does not extend to efforts to engage OM or counsel's interpretation of Harbinger's obligations under the SPA, which are not the same subject matter.

In order to determine the scope of Harbinger's subject matter waiver, it is necessary to look at the substance of the privileged documents produced pursuant to the waiver. I have

6

reviewed thirteen documents identified by OM that have been voluntarily produced by Harbinger pursuant to its subject matter waiver. Notably, these documents reflect communications pertaining to Harbinger's efforts to seek reversal of the MIA's decision in the limited context of dealings with the MIA.[2] The MIA initially communicated its denial in a telephone conference. Most of the disclosed communications reflect discussions internally at Harbinger and with OM regarding whether to request a "reasoned" written denial, whether to request a draft opinion, and whether to withdraw the application or request that the MIA defer a written denial in order to give the parties an opportunity to propose acceptable terms. Of particular concern to Harbinger was the effect of these procedural alternatives on the running of the 150 days for negotiation. These documents do not reflect privileged communications regarding "efforts to engage OM" in the negotiation of alternative terms. More importantly, it is not readily apparent how these documents support Harbinger's position in the litigation, or, as your Honor remarked in hearings on this issue, how the disclosed documents "suit their purpose." Accordingly, I find that Harbinger has not selectively disclosed these documents for tactical advantage, and that fairness does not require disclosure of communications on the broader subject of efforts to engage OM in the negotiation of alternative terms.

The only privileged document identified by OM that refers to counsel's interpretation of the SPA is an email containing "Talking Points" for a call or meeting with the MIA, in which Harbinger's lead outside counsel tells an in-house lawyer that it is important not to make any statement in front of OM that "concede[s] that we have an obligation to revise the transaction in the absence of an MIA a requirement to do so (which is the literal language of the SPA). We

---

[2] I recognize that Harbinger's formulation of its subject matter waiver can be interpreted literally to include efforts to engage OM in negotiations regarding alternative terms. However, this formulation cannot, by itself, effect a waiver beyond the subject matter of privileged documents actually disclosed.

7

want to preserve the possibility of fighting them on that point although I doubt we will."[3]  I find, however, that this isolated disclosure of Harbinger's strategy does not constitute the misleading use of privileged or protected communications or information that in fairness requires the production of all communications containing counsel's legal opinion and advice regarding the requirements of the SPA.[4]


## ALLOCATION OF COSTS

Paragraph 7 of the Order Appointing a Special Discovery Master provides that "Defendant shall bear the costs and fees associated with the Special Master * * *unless the Special Master determines in her discretion that a portion or all of the cost should be reallocated to Plaintiff."  In light of my determination that the vast majority of Harbinger's privilege designations were proper, and my determination with respect to subject matter waiver, there is no basis for a reallocation of any costs or fees to Plaintiff.

---

[3] HARB-E0162608.

[4] OM incorrectly asserts that Harbinger's primary outside counsel, Michael Devins, testified "extensively" at his deposition about his analysis of Harbinger's obligations under the SPA and the legal advice provided to Harbinger on that topic.  I have read the transcript of the Devins deposition, and reviewed the exhibits presented at the deposition.  Although Mr. Devins describes the subject matter of certain communications with his client, I find that neither his testimony, nor the deposition exhibits, discloses what was actually communicated to the client. Indeed, Harbinger's counsel objected to OM's attempt to elicit such testimony.  Accordingly, I find that Mr. Devins's deposition testimony did not effect a waiver of the privilege with respect to counsel's interpretation of Harbinger's legal obligations under the SPA.

## PROCEDURE FOR FILING OBJECTIONS

The parties are directed to file any objections to this Report and Recommendation with Judge Peck no later than September 9, 2013, and are requested to provide a copy of such objections to the Special Master.

Respectfully submitted,

*Kathleen A. Roberts*

KATHLEEN A. ROBERTS
SPECIAL MASTER

August 22, 2013

## PROCEDURE FOR FILING OBJECTIONS

The parties are directed to file any objections to this Report and Recommendation with Judge Peck no later than September 9, 2013, and are requested to provide a copy of such objections to the Special Master.

Respectfully submitted,

*Kathleen A. Roberts*

KATHLEEN A. ROBERTS
SPECIAL MASTER

August 22, 2013

## PROCEDURE FOR FILING OBJECTIONS

The parties are directed to file any objections to this Report and Recommendation with Judge Peck no later than September 9, 2013, and are requested to provide a copy of such objections to the Special Master.

Respectfully submitted,

*Kathleen A. Roberts*

_____
KATHLEEN A. ROBERTS
SPECIAL MASTER

August 22, 2013

## PROCEDURE FOR FILING OBJECTIONS

The parties are directed to file any objections to this Report and Recommendation with Judge Peck no later than September 9, 2013, and are requested to provide a copy of such objections to the Special Master.

Respectfully submitted,

*Kathleen A. Roberts*

KATHLEEN A. ROBERTS
SPECIAL MASTER

August 22, 2013

| | | | | |
|---|---|---|---|---|
| 73 | HARB-E0027850 | HARB-E0027856 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 77 | HARB-E0027876 | HARB-E0027878 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 148 | HARB-E0029390 | HARB-E0029393 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 239 | HARB-E0033577 | HARB-E0033587 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 956 | HARB-E0111119 | HARB-E0111123 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 1061 | HARB-E0111907 | HARB-E0111912 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 1062 | HARB-E0111918 | HARB-E0111924 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 1083 | HARB-E0112147 | HARB-E0112149 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 1211 | HARB-E0115637 | HARB-E0115666 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 1529 | HARB-E0132102 | HARB-E0132106 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 1569 | HARB-E0134177 | HARB-E0134179 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 1601 | HARB-E0136157 | HARB-E0136159 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |

| | | | | |
|---|---|---|---|---|
| 1604 | HARB-E0136184 | HARB-E0136187 | Redaction on Bates 187 Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 1605 | HARB-E0136188 | HARB-E0136191 | Redaction on Bates 191 Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 1607 | HARB-E0136202 | HARB-E0136203 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 1627 | HARB-E0136688 | HARB-E0136690 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 1642 | HARB-E0136820 | HARB-E0136821 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 1738 | HARB-E0140226 | HARB-E0140227 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 1908 | HARB-E0143443 | HARB-E0143445 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 3113 | HARB-E0166289 | HARB-E0166296 | First redacted paragraph Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 3121 | HARB-E0167152 | HARB-E0167159 | First redacted paragraph Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 3130 | HARB-E0167129 | HARB-E0167136 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |

|  |  |  |  |  |
|---|---|---|---|---|
| 3138 | HARB-E0166125 | HARB-E0166128 | Redaction on Bates 127 Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 3140 | HARB-E0166140 | HARB-E0166141 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 3141 | HARB-E0166142 | HARB-E0166143 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 3142 | HARB-E0166144 | HARB-E0166146 | Redaction on Bates 145 Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 3143 | HARB-E0167189 | HARB-E0167190 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 3144 | HARB-E0167191 | HARB-E0167192 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 3145 | HARB-E0167193 | HARB-E0167194 | Redaction on Bates 194 Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 3162 | HARB-E0169809 | HARB-E0169810 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 3163 | HARB-E0169811 | HARB-E0169812 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |
| 3164 | HARB-E0169813 | HARB-E0169814 | Not Privileged | Redaction does not contain legal advice or a request for legal advice |

| | | | | |
|---|---|---|---|---|
| 7014 | 1421552 | 1421552 | Produce Glass email to Board Members @ 1:43 | Email to be produced does not contain legal advice or a request for legal advice |
| 7015 | 1421553 | 1421553 | Produce Glass email to Board Members @ 1:43 | Email to be produced does not contain legal advice or a request for legal advice |
| 7016 | 1421554 | 1421555 | Produce Glass email to Board Members @ 1:43 | Email to be produced does not contain legal advice or a request for legal advice |
| 7030 | 10804171 | 10804171 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 7031 | 10806711 | 10806711 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 7032 | 10806956 | 10806956 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 7033 | 10807205 | 10807205 | Redact first email (McKnight @ 5:53); produce remainder of document | Emails to be produced do not contain legal advice or a request for legal advice |
| 7034 | 10807206 | 10807206 | Redact Glass email @ 6:15; (McKnight @ 5:53); produce remainder of document | Emails to be produced do not contain legal advice or a request for legal advice |
| 7117 | 1416830 | 1416830 | Not Privileged | Document does not contain legal advice or a request for legal advice |

| | | | | |
|---|---|---|---|---|
| 7118 | 1420605 | 1420605 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 7119 | 1421212 | 1421212 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 7120 | 1421213 | 1421213 | Redact first two emails (Gass @ 4:33; Glass @ 9:35); produce remainder of document | Emails to be produced do not contain legal advice or a request for legal advice |
| 7121 | 1421219 | 1421219 | Redact Gass email @ 4:33; produce remainder of document | Emails to be produced do not contain legal advice or a request for legal advice |
| 7166 | 1808200 | 1808201 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 7286 | 1816135 | 1816135 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 7401 | 7503919 | 7503920 | Redact Maura email @ 7:51; produce remainder of document | Emails to be produced do not contain legal advice or a request for legal advice |
| 7402 | 7503928 | 7503929 | Redact Maura emails @ 7:51 and 8:03; redact Glass email @ 2:57; produce remainder of document | Emails to be produced do not contain legal advice or a request for legal advice |

| | | | | |
|---|---|---|---|---|
| 7629 | 1819555 | 1819557 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 8193 | 1426409 | 1426409 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 8496 | 13015457 | 13015470 | Not Privileged | Document does not contain legal advice or a request for legal advice; predominant purpose is business |
| 8531 | 5000890 | 5000895 | Not Privileged | Document does not contain legal advice or a request for legal advice; predominant purpose is business |
| 8533 | 5006131 | 5006137 | Not Privileged | Document does not contain legal advice or a request for legal advice; predominant purpose is business |
| 8623 | 65104551 | 65104553 | Redact first email @ 3:06; produce remainder of document | Email to be produced does not contain legal advice or a request for legal advice |
| 8706 | 5009111 | 5009112 | Not Privileged | Document does not contain legal advice or a request for legal advice (scheduling) |

| | | | | |
|---|---|---|---|---|
| 8733 | 14900002 | 14900002 | Not Privileged | Document does not contain legal advice or a request for legal advice; predominant purpose is business |
| 9227 | 4606208 | 4606209 | Not Privileged | Document does not contain legal advice or a request for legal advice (scheduling) |
| 9228 | 4606206 | 4606207 | Not Privileged | Document does not contain legal advice or a request for legal advice (scheduling) |
| 9244 | 4601469 | 4601469 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 9252 | 12101309 | 12101309 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 9272 | 14806214 | 14806216 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 9273 | 15407260 | 15407262 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 9274 | 19203047 | 19203049 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 9275 | 19203050 | 19203051 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 9277 | 24914191 | 24914193 | Not Privileged | Document does not contain legal advice or a request for legal advice |

| No. | Beg Bates | End Bates | Privilege | Comments |
|---|---|---|---|---|
| 9278 | 24914194 | 24914197 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 9279 | 24914198 | 24914200 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 9280 | 24914201 | 24914204 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 9281 | 24914205 | 24914208 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 9282 | 24914216 | 24914219 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 9365 | 15403053 | 15403080 | Not Privileged | Document does not contain legal advice or a request for legal advice |
| 9368 | 24911540 | 24911541 | Not privileged | Document does not contain legal advice or a request for legal advice |
| 9402 | 24916510 | 24916510 | Not Privileged | Document does not contain legal advice or a request for legal advice |