UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HARBINGER F&G, LLC,

                          Plaintiff,

v.

OM Group (UK) Limited,

                          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

No. 12-civ-5315 (RA)

ECF Case

## DECLARATION OF JEAN-FRANCOIS LEMAY IN OPPOSITION TO DEFENDANT/COUNTERCLAIM PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I, Jean-Francois Lemay, hereby declare as follows:

1.     I am the Chief Investment Officer of Front Street Re Ltd. ("Front Street"), a subsidiary of Harbinger Group Inc. ("Harbinger"). I worked closely with Harbinger on a reinsurance transaction (the "Reinsurance Transaction") between Front Street and Fidelity & Guaranty Life Insurance Company ("FG Life") at issue in this litigation. I submit this declaration based on personal knowledge in opposition to the motion of OM Group (UK) Limited ("OM") for summary judgment against Harbinger.

2.     I hold a B.S. in actuarial science from Laval University, Quebec Canada. I have over 21 years of experience as a life insurance actuary, with a specific focus in modeling and analyzing both the asset and liability side of the balance sheet and designing and pricing reinsurance deals. I have worked at Front Street since its inception in 2010, initially joining as the Chief Risk Officer.

3.     On September 28, 2012, FG Life submitted a new Form D to the MIA for a revised reinsurance agreement with Front Street (the "Revised Reinsurance Transaction").[1] I participated in discussions about the terms for this transaction and oversee the administration of the transaction at Front Street.

4.     During my deposition in this case, I was asked several questions about the Revised Reinsurance Transaction. I was asked whether Front Street harvested unrealized gains from the assets transferred to Front Street from FG Life. I testified that Front Street harvested approximately $50 to $75 million of unrealized gains from those assets.[2]

5.     I understand that based on this testimony OM contends in this litigation that "Harbinger had obtained substantial economic benefits from this approved transaction, including, among other things, approximately $75 million in immediate capital gains." OM's Br. Supp. Mot. Summ. J. 14, Doc. No. 44 (citing Lemay Dep. 295:5-298:15, Doc. No. 45-43); OM's Local Rule 56.1 Statement ¶ 67, Doc. No. 46.

6.     OM misunderstands my testimony and confuses harvesting unrealized gains for economic gain. OM is incorrect that harvesting $50 to $75 million of unrealized gains creates $50 to $75 million of economic benefit for Front Street or

---

[1] Declaration of Olga Kaplan in Support of Plaintiff/Counterclaim Defendant Harbinger F&G, LLC's Motion for Summary Judgment dated October 4, 2013, Ex. 65.

[2] Declaration of Sok T. Tea in Opposition to Defendant/Counterclaim Plaintiff's Motion for Summary Judgment dated November 5, 2013, Ex. 8 at 297: 4-19 (Lemay Dep.).

Harbinger. To the contrary, harvesting unrealized gain upon inception of the treaty, as explained below, does not generate economic profit and has a neutral impact on Front Street's balance sheet.

7.   As a result of the Revised Reinsurance Transaction, FG Life transferred to Front Street a block of business. A block of business consists of liabilities, *i.e.,* the policies the reinsurer is agreeing to take on, and the assets that support those liabilities. The block was fairly priced meaning that the assets were priced consistent with actuarial appraisal methodology to support the ceded liabilities. Consistent with actuarial appraisal, there was a $15 million ceding commission. A ceding commission is a fee exchanged between the reinsurance company and the original issuer of a group of policies for transferring the block of business. In other words, along with the ceding commission, the transaction ensured that the assets matched the liabilities being ceded.

8.   Some of the assets transferred to Front Street had unrealized gains, while some of the assets contained unrealized losses. Unrealized gains refer to the excess of the market value of certain assets over the statutory book value of the assets. The pricing for the Revised Reinsurance Transaction accounted for these unrealized gains and losses in fairly pricing the block of business.

9.   "Harvesting" means taking an asset recorded at its statutory book value and selling that asset at its market value to realize the gain. Harvesting an unrealized gain does not impact the matching liabilities that Front Street remains responsible for supporting. As a result, "harvesting" an unrealized gain has a neutral economic impact on Front Street and Harbinger.

10. In fact, Front Street and Harbinger can only achieve true economic gains from an increase in income from the assets. This is achieved, for example, from investing in higher yielding assets such as below-investment-grade assets and earning more income over time from the higher yield on those assets.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Toronto, Canada on this 5th day of November, 2013.

_____
Jean-Francois Lemay